UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| VINTON STEEL, LLC., § § *Movant*, § v. § EP-22-MC-00452-DCG § COMMERCIAL METALS COMPANY, § § *Respondent*. § | |

### MEMORANDUM ORDER TRANSFERRING MOTIONS

Presently before the Court is Movant Vinton Steel, LLC's ("Vinton") "Motion to Quash Subpoena to Produce Documents" (ECF No. 1); the subpoena was served by Respondent Commercial Metals Company ("CMC") pursuant to Federal Rule of Civil Procedure 45. Also before the Court is CMC's "Cross-Motion to Compel Production of Documents" (ECF No. 5) requested in the subpoena. Pursuant to 28 U.S.C. § 636(b)(1)(A) and Rule 1(c) of Appendix C to Local Rules of the Western District of Texas, the Honorable David C. Guaderrama, United States District Judge, referred the motions to the undersigned Magistrate Judge for determination. For the reasons set forth below, the Court determines that the motions should be transferred to the Northern District of California, Oakland Division, where the underlying action, *Pacific Steel Group v. Commercial Metals Company et al.*, No. 4:20-CV-07683-HSG, is pending before the Honorable Haywood S. Gilliam, Jr., United States District Judge.

### I. BACKGROUND

In the underlying action, an antitrust lawsuit, Pacific Steel Group ("PSG") alleges that CMC engaged in anticompetitive conduct in violation of Sections 1 and 2 of the Sherman Act;

PSG brought the lawsuit in October 2020.[1]  CMC, the largest manufacturer of steel reinforcing bars ("rebar") in the United States, manufactures rebars at its two "micro mills"[2] (one in Mesa, Arizona, and the other in Durant, Oklahoma) that use a proprietary technology owned by Danieli Corporation ("Danieli"); Danieli is the only company in the world to have built a micro mill.[3] PSG is a fabricator and installer of rebar: it purchases stock rebar from rebar manufacturers like CMC, fabricates the rebar according to structural engineers' construction plans, and installs the fabricated rebar at construction sites.[4]  PSG wanted to become a rebar manufacturer, and thereby become vertically integrated, to, *inter alia*, supply its own rebar needs.[5]  In 2019, PSG began negotiating with Danieli to build a micro mill near the greater Los Angeles basin to manufacture rebar.[6]  Unbeknownst to PSG, Danieli was simultaneously negotiating with CMC to build a new micro mill for CMC.[7]  In August 2020, CMC announced that it had contracted with Danieli to build a second micro mill in Mesa, Arizona.[8]  As part of that agreement (CMC-Danieli

---

[1] First Am. Compl. at ¶ 137, No. 4:20-CV-07683-HSG (N.D. Cal.), ECF No. 76.  PSG also asserts several state-law claims under California law.

[2] As relevant here, PSG's amended complaint mentions two types of mills that are used to produce rebar in the United States today: "mini mill" and "micro mill."  Mini mills are legacy mills; the first mini mill was constructed in the United States in 1964 and the last in 1996.  *Id.* at ¶ 5.  Micro mills are of recent advent: they use more advanced technologies.  *Id.* at ¶ 56.  As compared to mini mills, micro mills are more efficient, require lower capital expenditure, and offer lower operating costs, including lower labor costs.  *See id.* ¶¶ 52, 53, 56, 65.

[3] *Id.* at ¶¶ 8, 21, 52.

[4] *Id.* at ¶¶ 2, 19, 36–37.

[5] *See id.* at ¶ 3.

[6] *Id.* at ¶¶ 92–102.

[7] *Id.* at ¶¶ 60, 103.

[8] *Id.*

agreement), Danieli agreed to a geographic exclusivity provision, under which it is prohibited from building one of its proprietary micro mills for any company other than CMC within a 500-mile radius of Rancho Cucamonga, California for 69 months.[9] PSG alleges that the exclusivity provision harmed competition in the relevant market and had anticompetitive effects, including that PSG "was prevented from entering the relevant rebar manufacturing market."[10]

On December 7, 2022, Vinton, which manufactures rebar at its "mini mill"[11] located in Vinton, Texas,[12] and is a nonparty to the underlying action, initiated this miscellaneous action by filing the instant motion to quash (ECF No. 1) CMC's subpoena.  The subpoena was issued from the Northern District of California, Oakland Division (the "issuing court"), where the underlying action is pending.  CMC served the subpoena on November 8, 2022, and later served it again after amending its place of compliance to be in El Paso, Texas, which falls within the El Paso Division of this District.[13]  On December 6, 2022, Vinton served its objections to CMC's subpoena.[14]  On December 19, 2022, CMC filed the instant cross-motion to compel production of documents (ECF No. 5).  The parties' briefing on the motions was completed by January 3,

---

[9] *Id.* at ¶¶ 6, 104, 106.

[10] *Id.* at ¶ 137.

[11] *See* note 2, *supra*.

[12] Vinton's Mot. to Quash Subpoena to Produc. Docs. Served by CMC [hereinafter, Vinton's Mot. to Quash], ECF No. 1.

[13] Vinton's Resp. to CMC's Mot. to Compel & Reply to CMC's Resp. to Vinton's Mot. to Quash at 2 [hereinafter, Vinton's Combined Resp. & Reply], ECF No. 13.  In the original subpoena, the place of compliance was listed as Austin, Texas, which falls within the Austin Division of this District.

[14] Vinton's Objs. to CMC's Subpoena, ECF No. 5-11.

2023.[15]

On February 21, 2023, the Court ordered the parties to meet and confer regarding the two motions and submit a joint report on the outcome of their meet-and-confer session; the Court requested further briefing on the issue of whether the motions should be transferred to the issuing court.[16]  On March 3, 2023, the parties filed the joint report.[17]  According to the report, on February 28, 2023, counsel for Vinton and CMC met via videoconference to confer on their disputes arising from CMC's subpoena.[18]  Also joined in the videoconference was PSG's counsel; previously, PSG served a materially identical subpoena on Vinton on November 22, 2022.[19]

## II.  DISCUSSION

CMC's subpoena includes thirteen requests for production of documents.  CMC's Subpoena, ECF No. 5-3.  In its motion to compel, CMC requests the Court to order Vinton to produce only requests for production numbered 4, 6, 7, 8, 9, and 13.[20]  CMC's Cross-Mot. to

---

[15] CMC's Resp. to Vinton's Mot. to Quash (Dec. 19, 2022), ECF No. 6; Vinton's Combined Resp. & Reply (Dec. 27, 2022); CMC's Reply to Vinton's Combined Resp. & Reply (Jan. 3, 2023), ECF No. 15.

[16] Order at 1–2, ECF No. 18.

[17] Joint Notice, ECF No. 19.

[18] *Id.* at 1.

[19] *Id.*

[20] According to the parties, during their February 28, 2023 meet-and-confer session, CMC's counsel proposed that if Vinton would agree to produce a specific portion of the data sought by the Requests 6 and 7, CMC would no longer pursue production for documents and data responsive to the remaining requests to which Vinton previously objected.  Joint Notice at 2.  Request No. 6 in CMC's Subpoena seeks "[d]ocuments sufficient to show, on a monthly basis, Your total sales, shipments, prices, freight costs, and margins for rebar by customer location and mill in the United States from January 1, 2017 to the present," and Request No. 7 seeks "[d]ocuments sufficient to show, on a monthly basis, Your total production by product (e.g., rebar, merchant bar) for each mill operated by Vinton in the United States from January 1, 2017 to the present."  *Id.* 2–3.

Compel at 9, ECF No. 5.  Vinton, as mentioned, a nonparty to the underlying action, moves the Court to quash the subpoena because, it says, the requests, even as subsequently modified by CMC, are overbroad, they subject Vinton to substantial and undue burden, and "most importantly," they seek production of Vinton's trade secrets and commercially sensitive information to its competitors.  Vinton's Mot. to Quash at 1, 5, 9; Vinton's Combined Resp. & Reply at 5.

Moreover, CMC, in the alternative, encourages the Court, albeit lukewarmly, to transfer the motions to the issuing court.  CMC's Cross-Mot. to Compel at 9; Joint Notice at 5 n.2.  Vinton does not consent, but objects, to the transfer.  Vinton's Combined Resp. & Reply at 10.

"Under Rule 45, a court must modify or quash a subpoena that subjects a person to undue burden."  *Leonard v. Martin*, 38 F.4th 481, 489 (5th Cir. 2022) (citing Fed. R. Civ. P. 45(d)(3)(A)(iv)).  To determine whether a subpoena presents an undue burden, courts weigh the following factors: "(1) the relevance of the information requested; (2) the need of the [requesting] party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the [requesting] party describes the requested documents; and (6) the burden imposed."  *Id.* (internal quotes omitted).  "Moreover, where a subpoena requests information from a nonparty, as it does here, the court must be sensitive to the nonparty's compliance costs."  *Id.*

The Rule "provides additional protections where a subpoena seeks trade secret or confidential commercial information from a nonparty."  *Gonzales v. Google, Inc*., 234 F.R.D. 674, 684 (N.D. Cal. 2006).  If the nonparty shows that the requested information is a trade secret or confidential commercial information, the burden shifts to the requesting party to show "a substantial need for the . . . material that cannot be otherwise met without undue hardship."  Fed.

R. Civ. P. 45(d)(3)(C)(i); *Gonzales*, 234 F.R.D. at 684.  "Determining 'substantial need' requires taking into account the relevance and importance of the material sought, as well as the availability of facts from other sources."  *In Re Apple iPhone Antitrust Litig.*, No. 11-CV-06714-YGR-TSH, 2020 WL 5993223, at *3 (N.D. Cal. Oct. 9, 2020) (citing *Nat'l Union Fire Ins. v. Murray Sheet Metal Co.*, 967 F.2d 980, 985 (4th Cir. 1992); *FTC v. Boehringer Ingelheim Pharms., Inc.*, 778 F.3d 142, 154 (D.C. Cir. 2015)).

Rule 45's Subsection (f) provides that "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances."  Fed. R. Civ. P. 45(f).  "Where exceptional circumstances exist, a court may transfer such a subpoena-related motion *sua sponte*."  *Victim Servs., Inc. v. Consumer Fin. Prot. Bureau*, 298 F. Supp. 3d 26, 28 (D.D.C. 2018) (citing *Orix USA Corp. v. Armentrout*, No. 3:16-MC-63-N-BN, 2016 WL 3926507, at *2 (N.D. Tex. July 21, 2016) ("Rule 45(f) does not require that a motion to transfer be filed . . . .")).  Although the Rule does not provide a definition of "exceptional circumstances," familiarity with the underlying action "is a compelling factor [favoring transfer of such a motion] in 'highly complex' cases where the issuing court is aware of 'the full scope of issues involved as well as any implications the resolution of the motion will have on the underlying litigation.'"  *In re Niaspan Antitrust Litig.*, No. CIV. JKB-15-1208, 2015 WL 3407543, at *1 (D. Md. May 26, 2015) (quoting *Wultz v. Bank of China, Ltd.*, 304 F.R.D. 38, 46 (D.D.C. 2014)).

Turning to the parties' specific arguments, CMC contends that the documents and information its subpoena seeks are "essential" to defend itself against PSG's allegations in the underlying action.  CMC's Reply to Vinton's Combined Resp. & Reply at 2; *see also* CMC's

Cross-Mot. to Compel at 8 & n.5 (claiming substantial need for the documents).  It explains that its requests for production are relevant to three specific allegations made by PSG: 1) whether PSG has properly alleged a geographic market; 2) whether CMC has monopoly power in a relevant market; and 3) whether mini mills are an effective means of competition.[21]  CMC's Cross-Mot. to Compel at 5; *see also* CMC's Resp. to Vinton's Mot. to Quash at 3.  Further, CMC points out that in ruling on its motion to dismiss, Judge Gilliam viewed PSG's allegations of geographic market and monopoly power with "great skepticism."  CMC's Cross-Mot. to Compel at 6.[22]

Vinton, on the other hand, submits that CMC's subpoena covers essentially all material aspects of operating Vinton's mill and its strategies for competing in the marketplace and requires production of its trade secrets and commercially sensitive information to its competitor, CMC, and potential competitor, PSG.  Vinton's Mot. to Quash at 8–9.  It contends, therefore, that its ability to compete in the marketplace would be prejudiced, if not potentially destroyed, were it to disclose the documents and information sought.  *Id.* at 9.  Vinton is fearful that it would have little ability to ensure the enforcement of the protective order Judge Gilliam entered

---

[21] In its pleadings, PSG defines the relevant "geographic market" for rebar manufacturing as "consist[ing] of suppliers located within a 500-mile radius from the high desert area near the greater Los Angeles basin," and to calculate market share, PSG excludes the rebar sales of all manufacturers outside the radius—regardless of how much rebar those manufacturers ship into the market.  First Am. Compl. at ¶¶ 120, 126, No. 4:20-CV-07683-HSG; Order Denying in Part & Granting in Part Mot. to Dismiss at 10, No. 4:20-CV-07683-HSG, ECF No. 92.

[22] *See also, e.g.*, Order Denying in Part & Granting in Part Mot. to Dismiss at 11, No. 4:20-CV-07683-HSG ("In short, both the center and the boundary of PSG's geographic market merit real scrutiny."); *id* at 14 ("All of this is to say that the Court has significant questions about the ultimate viability of the Amended Complaint's proposed geographic market."); *id.* at 16 ("Again, the Court has questions about this unusually narrow geographic market."); *id.* at 23 ("Although market power and monopoly power are related but distinct concepts, CMC's monopoly power argument is based on the same line of reasoning that the Court already addressed when analyzing CMC's market power in the market definition context." (internal quotes omitted)).

in the underlying action.  Vinton's Mot. to Quash at 9–10; *cf. also* Vinton's Combined Resp. & Reply at 7 & n.8, 8.[23]

Moreover, Vinton argues that CMC cannot show substantial need for the documents requested for at least two reasons.  Vinton's Combined Resp. & Reply at 9.  First, pointing out that CMC served identical subpoenas on other rebar manufacturers who, like CMC and PSG, are much larger than Vinton, Vinton argues that CMC has no need for documents from Vinton, which is much smaller in size and a single-mill operation.  *Id.* at 5–6; *see also id.* at 9; CMC's Resp. to Vinton's Mot. to Quash at 4 n.4 (listing Nucor Corporation, Cascade Steel, Steel Dynamics Inc., Gerdau S.A., and Deacero as other subpoenaed rebar manufacturers).  Second, Vinton points out that Danieli reached an agreement (PSG-Danieli agreement) to construct a micro mill for PSG in Mojave, California (which appears to be within the geographical area restricted under the exclusionary provision of the CMC-Danieli agreement) and argues that the PSG-Danieli agreement cuts against the weighing of the relevance of CMC's requests against Vinton's interests.  Vinton's Combined Resp. & Reply at 6 (citing Ex. C).

These competing arguments and the requisite balancing of the opposing interests can be, in the Court's view, more expeditiously addressed by Judge Gilliam because of his ready

---

[23] In the underlying action, on December 20, 2022, Judge Gilliam entered an amended protective order that includes amendments to the provisions governing disclosure of "highly confidential—outside counsel's eyes only" designated information.  Stipulation & Am. Protective Order at ¶¶ 7.3, 7.4, No. 4:20-CV-07683-HSG, ECF No. 127.

CMC says that these provisions adequately address Vinton's concerns about its trade secret and competitively sensitive information.  CMC's Cross-Mot. to Compel at 2; CMC's Resp. to Vinton's Mot. to Quash at 3 & n.2, 8; *cf. Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1325 (Fed. Cir. 1990) ("In appropriate cases, particularly where the company from whom discovery is sought has an affinity with a party to the main litigation, a protective order may be effective protection to a nonparty. . . . The California court retains authority to decide what materials are properly deemed 'confidential' and what part of the trial shall be *in camera*.  It would be divorced from reality to believe that either party here would serve as the champion of its competitor [a nonparty subjected to a Rule 45 subpoena] either to maintain the confidentiality designation or to limit public disclosure as much as possible during trial.").

familiarity with the underlying action. Although Judge Gilliam has not yet ruled on any discovery disputes in the underlying action,[24] *see* Joint Notice at 6, 11, he is in a superior position than this Court because of his extensive familiarity with the issues and allegations presented in the underlying action: the action has been pending for more than two years, and Judge Gilliam has, on his own (without the aid of a magistrate), managed the case from its inception; he ruled on two motions to dismiss;[25] before ruling on the second motion to dismiss, he presided over a hearing on the motion that lasted over an hour;[26] and he twice issued protective orders governing confidentiality of certain discovery.[27] The Court therefore finds that the motions should be transferred in light of Judge Gilliam's superior familiarity with the underlying action. *Cf. La Buy v. Howes Leather Co.*, 352 U.S. 249, 255–56 (1957) (an antitrust case) (observing that the district judge's "knowledge of the cases" acquired in part because he "heard arguments on motions to dismiss, to compel testimony on depositions, and for summary judgment" "points to the conclusion that he could dispose of the litigation with greater dispatch and less effort than anyone else").

Moreover, exceptional circumstances may exist where transfer is warranted "in order to avoid disrupting the issuing court's management of the underlying litigation." Fed. R. Civ. P. 45

---

[24] *See Google, Inc. v. Digit. Citizens All.*, No. MC 15-00707 JEB/DAR, 2015 WL 4930979, at *3 (D.D.C. July 31, 2015) ("While the Respondents argue that transfer is not warranted because the [issuing court] has not yet ruled on the exact contentions at issue in the motions to compel, nothing in the Advisory Committee Note [to Rule 45], or subsequent case law, precludes this Court from relying on other aspects of case management, such as impending discovery deadlines and case-specific issues, to transfer a subpoena-related motion." (internal quotes omitted)).

[25] Order Granting Mots. to Dismiss, No. 4:20-CV-07683-HSG, ECF No. 74; Order Denying in Part & Granting in Part Mot. to Dismiss, No. 4:20-CV-07683-HSG, ECF No. 92

[26] Tr. of Telephonic Proc. at 3, 48, No. 4:20-CV-07683-HSG, ECF No. 91.

[27] Stipulation & Protective Order, No. 4:20-CV-07683-HSG, ECF No. 73; Stipulation & Am. Protective Order, No. 4:20-CV-07683-HSG, ECF No. 127.

advisory comm.'s notes to 2013 amend. In ruling on the second motion to dismiss in late-April 2022, Judge Gilliam wrote, "[g]iven the age of this case, the Court intends to promptly set a case schedule without regard to whether [PSG] opts to further amend its complaint."[28] He then issued a scheduling order in mid-May 2022 that set the discovery deadline as March 3, 2022, and the case for trial on October 16, 2023.[29] On November 8, 2022 (approximately six months after Judge Gilliam issued the scheduling order and four months before the then discovery deadline), CMC served the subpoena at issue with a return date of December 8, 2022. On January 12, 2023 (shortly after the parties' briefing on the motions was completed before this Court), CMC and PSG requested Judge Gilliam to amend the scheduling order on the ground, in part, that CMC's and Vinton's motions are pending before this Court.[30] Judge Gilliam granted the request, and the amended scheduling order sets the discovery deadline as June 16, 2023, and the case for trial on February 12, 2024.[31] Under these circumstances, the Court finds that not transferring the motions could potentially disrupt Judge Gilliam's management of the underlying action insofar as this Court requires time to adequately familiarize itself with the underlying action. *See In re Braden*, 344 F. Supp. 3d 83, 92 (D.D.C. 2018) ("Should this Court decline to transfer the subpoena disputes, the time it must take to familiarize itself with the underlying action would risk disrupting the [issuing court's] case management order.").

---

[28] Order Denying in Part & Granting in Part Mot. to Dismiss at 29, No. 4:20-CV-07683-HSG.

[29] Scheduling Order, No. 4:20-CV-07683-HSG, ECF No. 96.

[30] Joint Statement Requesting Am. Scheduling Order at 3, No. 4:20-CV-07683-HSG, ECF No. 129.

[31] Am. Scheduling Order at 1, No. 4:20-CV-07683-HSG, ECF No. 130.

There is more. Exceptional circumstances warranting transfer may also exist when "the same issues are likely to arise in discovery in many districts." Fed. R. Civ. P. 45 advisory comm.'s notes to 2013 amend. Before Judge Gilliam, CMC and PSG represented that they served eighteen subpoenas on eleven different industry participants, several of which are international entities.[32] And here, CMC represents that it served "materially identical" Rule 45 subpoenas on numerous other rebar manufacturers, including Nucor Corporation, Cascade Steel, Steel Dynamics Inc., Gerdau S.A., and Deacero. CMC's Resp. to Vinton's Mot. to Quash at 4 n.4. The places of compliance, and therefore, the compliance courts, for these subpoenas are spread throughout the country: Charlotte, North Carolina; Chicago, Illinois; and San Francisco, California. Exs. E-I, CMC's Cross-Mot. to Compel, ECF Nos. 5-5–5-9. In addition, PSG's materially identical subpoena served on Vinton remains outstanding. Joint Notice at 1, 3. CMC now says that it anticipates additional motion practice in districts other than the Western District of Texas in the very near future.[33] *Id.* at 7.

Consequently, the risk of potentially inconsistent rulings by multiple courts presents exceptional circumstances warranting transfer. *See Google, Inc.*, 2015 WL 4930979, at *3 ("Courts have recognized that exceptional circumstances exist warranting transfer of subpoena-related motions when transferring the matter is in the interests of . . . avoiding inconsistent results." (cleaned up; collecting cases)); *see also* Report of Civ. Rules Advisory Comm. to Standing Comm. on Rules of Practice and Procedures at 3 (May 2, 2011) (Experience has shown that transfer is warranted when "[s]ubpoenas may have been served or may be expected in a

---

[32] Joint Statement Requesting Am. Scheduling Order at 2, No. 4:20-CV-07683-HSG.

[33] In an earlier brief, CMC stated that "And, of all the nonparty rebar manufacturers that the parties (both CMC and PSG) have subpoenaed in the underlying litigation, only Vinton has resorted to motion practice." CMC's Resp. to Vinton's Mot. to Quash at 4.

number of districts, raising a possibility of inconsistent resolution of issues bearing on all of them."), *available* at http://www.uscourts.gov/uscourts/RulesAndPolicies/rules/Reports/CV05-2011.pdf (last visited Mar. 13, 2023).

In sum, the Court finds that exceptional circumstances exist warranting transfer of the motions to the issuing court. Once exceptional circumstances have been found to exist, "transfer is appropriate only if . . . interests [favoring transfer] outweigh the interests of the nonparty served with the subpoena in obtaining local resolution of the motion." Fed. R. Civ. P. 45 advisory comm.'s notes to 2013 amend. "The prime concern should be avoiding burdens on local nonparties subject to subpoenas." *Id.*

Here, Vinton argues that its local counsel are not licensed in the State of California or to practice before the Northern District of California, nor does it have counsel in California. Joint Notice at 10. By its express language, the Rule squarely addresses Vinton's concern: "if the attorney for a person subject to a subpoena is authorized to practice in the court where the motion was made, the attorney may file papers and appear on the motion as an officer of the issuing court." Fed. R. Civ. P. 45(f). So, Vinton does not need to retain counsel in California.

Relatedly, the Advisory Committee Notes to Rule 45 state: "If the motion is transferred, judges are encouraged to permit telecommunications methods to minimize the burden a transfer imposes on nonparties, if it is necessary for attorneys admitted in the court where the motion is made to appear in the court in which the action is pending." Fed. R. Civ. P. 45 advisory comm.'s notes to 2013 amend. According to Judge Gilliam's standing order, although generally, an attorney may not appear telephonically at a hearing before him, the attorney may request the court's permission to so appear. Standing Order for Civ. Cases Before Dist. J. Gilliam at ¶ 17, available at https://www.cand.uscourts.gov/hsg_civil_standing_order_1-4-2022/ (last visited

Mar. 13, 2023). Moreover, in the underlying action, Judge Gilliam permitted counsel to appear telephonically for the hearing on CMC's second motion to dismiss and the case management conference.[34]

The Court therefore finds that any burden imposed on Vinton by transferring the motions to the issuing court would be minimal. It concludes that any such burden is clearly outweighed by the interests of judicial economy and speed of resolution to be gained from Judge Gilliam's superior familiarity with the underlying action, avoiding the risk of disruption to his management of the action, and further avoiding the risk of potentially inconsistent rulings by multiple courts—as considered above.

### III. CONCLUSION

For the foregoing reasons, **IT IS ORDERED**[35] that Vinton Steel, LLC's "Motion to Quash Subpoena to Produce Documents" (ECF No. 1) and Commercial Metals Company's "Cross-Motion to Compel Production of Documents" (ECF No. 5) are **TRANSFERRED** to the United States District Court for the Northern District of California, Oakland Division—where the underlying action, *Pacific Steel Group v. Commercial Metals Company et al.*, No. 4:20-CV-07683-HSG, is pending.

---

[34] *E.g.*, Tr. of Telephonic Proc. at 1, No. 4:20-CV-07683-HSG.

[35] *See In re U.S. Dep't of Educ.*, 25 F.4th 692, 698–99 (9th Cir. 2022) ("The magistrate judge had jurisdiction to issue the transfer order. . . . The order here merely transferred the action to another federal court and did not affect the viability of a claim or defense or the federal appellate courts' ability to correct errors. Thus, the transfer order was nondispositive, and the magistrate judge had jurisdiction to enter it." (discussing magistrate judges' authority, under 28 U.S.C. § 636(b)(1)(A), to transfer transfer a Rule 45 motion to quash a subpoena)); *id.* at 699 ("Jurisdiction remains even though the . . . district court [where compliance of the subpoena was required] did not review the objections to the magistrate judge's transfer order.").

**So ORDERED and SIGNED this  14th   day of March 2023.**

_____
**ANNE T. BERTON
UNITED STATES MAGISTRATE JUDGE**